# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM BROWN, | CASE NO. 1:08–cv–01764-LJO-BAM PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| J. KAVANAUGH, et al., | (ECF Nos. 43, 47, 48) |
| Defendants. | |
| _____/ | OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations on Motion for Summary Judgment**

## I.    Procedural History

Plaintiff Kareem Brown is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Following remand by the Ninth Circuit, this action is proceeding on the complaint, filed November 18, 2008, against Defendants Garcia and Kavanaugh for retaliation in violation of the First Amendment.  Defendants filed a motion for summary judgment on March 15, 2012.  (ECF No. 43.)  After receiving an extension of time, Plaintiff filed an opposition on May 16, 2012, and Defendants filed a reply on May 18, 2012.[1]  (ECF Nos. 47, 48.) The motion is deemed submitted pursuant to Local Rule 230(l), and the Court now issues its findings and recommendations for consideration.

///

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by Defendants in the motion for summary judgement.  Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## II.   Motion for Summary Judgment Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S. Ct. at 2553 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

## III.   Complaint Allegations

Plaintiff states that on July 1, 2008 Defendant Garcia refused to release him to attend a Men's

Advisory Counsel ("MAC") meeting.  (Compl. 12,[2] ECF No. 1.)  On July 7 or 8, 2008, Plaintiff states that Officer Beam phoned him and informed Plaintiff that Defendant Garcia stated that Plaintiff "had ratted on her." (Id.)  On July 14, 2008, Defendant Garcia requested that Plaintiff come to see her in the control booth.  Defendant Garcia asked Plaintiff if he had told other MAC members that she would not let him out to attend the MAC meeting.  When he answered yes, Defendant Garcia began asking Plaintiff why he had ratted on her in front of other inmates.  That same evening Plaintiff approached Defendant Kavanaugh to let him know that he was planning to file an inmate appeal due to Defendant Garcia's behavior.  (Id.)

On August 26, 2008, Defendant Kavanaugh told Plaintiff that Defendant Garcia had informed him that Plaintiff had forced the housing unit door open, which was a breach of security.  Plaintiff responded that Defendant Garcia was retaliating against him.  Defendant Kavanaugh told Plaintiff that he did not believe that Defendant Garcia had called Plaintiff a rat.  Defendant Kavanaugh suspended Plaintiff from the MAC for forcing the housing unit door open.  Plaintiff filed an appeal against Defendant Kavanaugh, which was discarded.  (Id. at 13.)

On August 29, 2008, Plaintiff was interviewed by Defendant Kavanaugh regarding the inmate appeal against Defendant Garcia.  (Id.)  Plaintiff alleges that Defendant Kavanaugh's previous statement that he did not believe Defendant Garcia called him a rat exhibits bias.  Plaintiff objected to Defendant Kavanaugh hearing the inmate appeal and his objection was not documented.  Plaintiff was found guilty of the rule violation.  (Id. at 14.)

On October 14, 2008, Plaintiff's supervisor contacted Defendant Garcia to inform her that Plaintiff's shift had ended early and requested that he be allowed entrance to the housing unit.  Plaintiff states that Defendant Garcia's response was, "It was up to her to let in who she wanted to." (Id.)  Defendant Garcia refused to let Plaintiff enter the housing unit, and Plaintiff filed an inmate appeal.  (Id.)

On November 9, 2008, Plaintiff was returning from dinner, and retrieved some homemade burritos from another inmate.  Defendant Kavanaugh confiscated the burritos without legal authority

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

to do so.  When Plaintiff sought to illicit information from Defendant Kavanaugh as to what authority he had to confiscate Plaintiff's food, Defendant Kavanaugh became angry and threatened to pepper spray Plaintiff and lay the dayroom down if Plaintiff did not return to his cell.  Plaintiff complied with the order to return to his cell and saw Defendant Kavanaugh throw the burritos over the fence.  Plaintiff received a rule violation report for refusing to obey a direct order.  Defendant Kavanaugh terminated Plaintiff's membership in the MAC.  (Id. at 15.)

On November 10, 2008, Plaintiff was interviewed by Defendant Kavanaugh for the inmate appeal he filed against Defendant Garcia.  Defendant Kavanaugh asked Plaintiff if he had any piercings and when Plaintiff responded affirmatively, Defendant Kavanaugh stated that Plaintiff would receive a rule violation for having a piercing.  After returning to his cell, Plaintiff was informed by another inmate that staff had been overheard to say that Plaintiff was showing too much aggression, which could be interpreted as a threat, and Plaintiff could be placed in administrative segregation.  (Id. at 16.)

**IV.  Defendants' Motion for Summary Judgment**

Defendants bring this motion for summary judgment on the grounds that Plaintiff is barred under the doctrine of Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), from pursuing some of his retaliation claims because his underlying rule violation convictions have not been set aside; he fails to show that the exercise of his First Amendment rights was the "but for" cause of Defendants' actions; and the adverse actions alleged by Plaintiff would not prevent a "person of ordinary firmness" from filing staff complaints and grievances.  Additionally, Defendants argue they are entitled to qualified immunity.

**A.  Defendants' Statement of Undisputed Facts**

1. The events at issue in Plaintiff's complaint occurred at California State Prison, Corcoran ("Corcoran"), in 2008.  (Compl. at 11.)

2. Plaintiff was an inmate in Facility 3A at Corcoran in 2008.  (Kavanaugh Dec. ¶ 2, ECF No. 43-3; Garcia Dec. ¶ 2, ECF No. 43-4.)

3. Defendant Garcia was a correctional officer at Corcoran for over eight and one half years.  (Garcia Dec. at ¶ 1.)

4

4.   In 2008, Defendant Garcia was assigned as a Third Watch Control Relief Officer for Facility 3A at Corcoran.  (Id. at ¶ 2.)

5.   Defendant Garcia's job duties included providing surveillance, controlling inmate movements and coordinating inmate cell releases with floor officers.  (Id. at ¶ 3.)

6.   Defendant Kavanaugh worked at Corcoran for over fifteen years, four of which were as a correctional lieutenant.  (Kavanaugh Dec. at ¶ 1.)

7.   Defendant Kavanaugh was a correctional lieutenant for Facility 3A at Corcoran in 2008.  (Id. at ¶ 2.)

8.   On July 1, 2008, Defendant Garcia was working the Control Booth for the Housing Unit 4 in Facility 3A during Third Watch (2:00 p.m. to 10:00 p.m.).  (Garcia Dec. at ¶ 4.)

9.   At the conclusion of the feeding of Unit 4 in the dining hall, Plaintiff requested to exit his cell to pass out pizza sale forms.[3]  (Id.)

10.  As no inmate movement is allowed until the utensil count clears the dining hall, Defendant Garcia was unable to grant Plaintiff's request at that time.  Plaintiff did not request to exit his cell to attend a Men's Advisory Council ("MAC") meeting.  (Id.)

11.  Defendant Garcia was later asked by another inmate why she refused to let Plaintiff attend the MAC meeting.  (Id. at ¶ 5.)

12.  Defendant Garcia informed the inmate that she did not refuse to allow Plaintiff to attend the MAC meeting, but had denied Plaintiff's request to pass out pizza forms in the housing unit at an inappropriate time.  (Id.)

13.  On July 14, 2008, Defendant Garcia asked Plaintiff why he had inaccurately told other MAC representatives that she had refused to allow him to attend a MAC meeting.  Defendant Garcia had previously not had any negative encounters with Plaintiff and did not know why he would misrepresent the events of July 1, 2008.  (Id. at ¶ 6.)

14.  During the conversation, Plaintiff stated, "I'm not a rat," when asked about his untruthful representation to the other MAC representatives.  At no time during this conversation did

---

[3]Plaintiff states that he requested to be released from his cell to attend the MAC meeting.  Defendant Garcia released the other MAC members to attend the meeting.  (Plaintiff's Opp. 3, ECF No. 47.)

1    Defendant Garcia call Plaintiff a "rat" or use profanity.[4]  (Id.)

2  15.   On July 16, 2008, Plaintiff filed a staff complaint through an inmate appeal ("602 appeal")

3        against Defendant Garcia, claiming that she had refused to release him from his cell to attend

4        the MAC meeting on July 1, 2008, and repeatedly called him a "rat" in front of other inmates

5        during their July 14, 2008, conversation.  (Compl. at 12; Kavanaugh Dec. at ¶ 4.)

6  16.   Defendant Kavanaugh conducted an investigation and interview process regarding Plaintiff's

7        602 appeal.  Defendant Kavanaugh's investigation of Plaintiff's 602 appeal (Log No. 08-

8        3841) included interviews with Plaintiff, inmates identified by Plaintiff as witnesses, and

9        correctional officer Beam and Defendant Garcia.  (Kavanaugh Dec. at ¶ ¶ 4, 5.)

10  17.   Based on Defendant Kavanaugh's investigation, he found Plaintiff's version of events was

11        unsubstantiated and no evidence that Defendant Garcia violated institutional policy.[5]  (Id. at

12        ¶ 5.)

13  18.   On August 26, 2008, the front door of Housing Unit 4 of Facility 3A malfunctioned and

14        would not close all the way shut.  Defendant Garcia was working the Control Booth for

15        housing Unit 4 in Facility 3A.  (Garcia Dec. at ¶ 7.)

16  19.   At approximately 3:00 p.m., Defendant Garcia observed Plaintiff ring the bell for access to

17        Housing Unit 4.  Before Defendant Garcia could respond to the bell, Plaintiff forced the yard

18        door open enough so he could enter in sideways and enter the building.[6]  Two other inmates

19        followed Plaintiff into the building.  (Id.)

20  20.   Defendant Garcia advised the inmates that it was not the correct time for them to enter the

21        building and ordered them to exit the building.  The other two inmates left, but Plaintiff

22        refused to exit the building and stood in the sally port area in protest.  (Id.; Wagley Dec. ¶

23        7a, ECF No. 43-5.)

24  21.   Floor staff responded and also ordered Plaintiff to exit the building and he continued to

25

26    [4]Plaintiff claims the use of the word rat was not voluntary and unsolicited, but Defendant Garcia initiated
    the use of the word rat.  (Id.)

27    [5]Plaintiff claims that the misconduct of Defendant Garcia was not unsubstantiated by other evidence.  (Id.)

28    [6]Plaintiff disputes that he forced the malfunctioning door open to gain entry to the housing unit.

6

1    refuse to obey those orders. Yard staff also responded and discussed the issue with Plaintiff.

2    Plaintiff was sent to his cell without further incident. (Garcia Dec. at ¶ 7.)

3    22.    Defendant Garcia issued Plaintiff a Rules Violation Report ("RVP") for Disobeying a Direct

4           Order under California Code of Regulations, Title 15, section 3005(b) for the August 26,

5           2008, incident. (Id.)

6    23.    A hearing on the August 26, 2008, RVR was conducted by correctional lieutenant Munoz,

7           and Plaintiff was found guilty of the charge of Disobeying a Direct Order. (Id. at ¶ 8;

8           Kavanaugh Dec. at ¶ 9.)

9    24.    Plaintiff was assessed thirty (30) days credit forfeiture consistent with a Division "F" offense

10          pursuant to California Code of Regulations, Title 15, section 3323. Plaintiff was also

11          assessed thirty (30) days Loss of Privileges, including loss of the recreational yard and loss

12          of eligibility for visits for ninety (90) days. (Garcia Dec. at ¶ 8; Kavanaugh Dec. at ¶ 9.)

13   25.    Plaintiff's guilty verdict for the August 26, 2008, incident has not been overturned or

14          rescinded. (Garcia Dec. at ¶ 9; Kavanaugh Dec. at ¶ 10.)

15   26.    Due to its serious nature, the August 26, 2008, incident was reported to Defendant

16          Kavanaugh. (Id. at ¶ 7.)

17   27.    Defendant Kavanaugh is the MAC staff delegate for Facility 3A. The MAC staff delegate

18          has the authority and responsibility for routine supervision and direction of the MAC under

19          California Department of Corrections and Rehabilitation Operations Manual (DOM) Section

20          53120.10.2.[7] (Id. at ¶¶ 6, 8.)

21   28.    Defendant Kavanaugh determined that Plaintiff's action of forcing a door open to gain entry

22          into a housing unit is a serious breach of institutional security and a threat to staff safety.

23          Defendant Kavanaugh prepared a notice to Plaintiff informing him that the serious nature of

24          his actions were good cause to temporarily suspend him from his position as a housing

25   _____

26   [7]Plaintiff disputes that Defendant Kavanaugh had the authority under Title 15 to suspend Plaintiff from his
     position as a MAC representative. Plaintiff's argument that the statute does not allow the Warden to delegate his
27   authority to an inferior officer would arise under due process. Plaintiff may not now expand the scope of this
     litigation via his opposition to Defendants' motion for summary judgment. See Gilmore v. Gates, McDonald & Co.,
28   382 F.3d 1312, 1315 (11th Cir. 2004). Plaintiff's claims are confined to those remanded by the Ninth Circuit. (ECF
     No. 20.)

1    representative to the MAC.  (Id. at ¶ 7.)

2    29.    Plaintiff's temporary suspension from the MAC ended on October 28, 2008, and he was

3           reassigned as a Facility 3A, Housing Unit 4 Mac representative.  (Id. at ¶ 11.)

4    30.    On October 14, 2008, Plaintiff's supervisor, Librarian B. Sanders, called Defendant Garcia

5           in the control booth to request entrance for Plaintiff into the housing unit as Plaintiff's shift

6           in the library was over early.  (Garcia Dec. at ¶ 10.)

7    31.    As maintenance staff were in Housing Unit 4 during the afternoon of October 14, 2008, all

8           inmates were temporarily denied access to Housing Unit 4 until the maintenance staff were

9           completed with their work.  Defendant Garcia informed Librarian Sanders that maintenance

10          staff were in the unit and she was unable to allow any inmates access to Housing Unit 4 until

11          maintenance staff had vacated the unit.  (Id.)

12   32.    On November 9, 2008, Defendant Kavanaugh observed Plaintiff in the dayroom of Housing

13          Unit 4 of Facility 3A with a large potato chip bag that clearly contained something heavier

14          than the intended contents of the bag.  (Kavanaugh Dec. at ¶ 12.)

15   33.    Defendant Kavanaugh confiscated the potato chip bag from Plaintiff and observed that it

16          contained prepared food.  Plaintiff loudly protested Defendant Kavanaugh's request to look

17          into the bag and began to angrily question Defendant Kavanaugh about his authority to look

18          into the bag.[8]  (Id.; Compl. at 15; Wagley Dec. at ¶ 7b.)

19   34.    In an effort to quell the situation, Defendant Kavanaugh repeatedly ordered Plaintiff to return

20          to his cell in the housing unit, but Plaintiff adamantly refused.  (Kavanaugh Dec. at ¶ 12.)

21   35.    Due to his repeated refusal to return to his cell, Defendant Kavanaugh advised Plaintiff that

22          he would order him and all inmates in the dayroom to a prone position if Plaintiff continued

23          to refuse to comply with the direct order.[9]  (Id.; Compl. at 15; Wagley Dec. at ¶ 7b.)

24   36.    When Defendant Kavanaugh ordered Plaintiff to return to his cell a third time, Plaintiff

25   _____

26          [8]Plaintiff disputes that he spoke loudly during the incident.  Plaintiff states he was seeking a legal
     justification for Defendant Kavanaugh to confiscate his food, which was not contraband.  (Id.)

27
            [9]Plaintiff claims that Defendant Kavanaugh also pulled out his pepper spray and threatened to spray
28   Plaintiff if he did not return to his cell.  (Id.)

began walking to his cell, but yelled, "Fuck you," to Kavanaugh as he was walking away. (Kavanaugh Dec. at ¶ 12; Wagley Dec. at ¶ 7b.)

37. Defendant Kavanaugh disposed of the prepared food and issued a RVR for Disobeying a Direct Order.  (Kavanaugh Dec. at ¶ 12.)

38. A hearing on the November 9, 2008, RVR was conducted by correctional lieutenant Borges on November 14, 2008.  (Id. at ¶ 13.)

39. Following the hearing, Plaintiff was found guilty of the charge of Disobeying a Direct Order and assessed another thirty (30) days credit forfeiture and thirty (30) days Loss of Privileges including loss of use of the dayroom and loss of eligibility for visits for ninety (90) days. (Id.)

40. Plaintiff's guilty verdict for the November 9, 2008, incident has not been overturned or rescinded.  (Id. at ¶ 14.)

41. On November 24, 2008, Plaintiff was requested to report to the program office for an interview on a 602 appeal.  Plaintiff refused and repeatedly closed his cell door after it was opened by the control booth to allow him to exit, used vulgarities, and refused to exit. Plaintiff was issued a written notice regarding his actions.  (Id. at ¶ 16.)

42. On December 1, 2008, Plaintiff was again requested to report to the program office for an interview on a 602 appeal.  Plaintiff again refused to report to participate in the appeal interview.  Plaintiff was issued another written notice regarding his actions.  (Id.)

43. Based on the November 9, 2008, incident and Plaintiff's continued defiance to staff instructions, Defendant Kavanaugh again suspended Plaintiff from his position as a MAC housing representative.[10]  (Id. at ¶ 15.)

44. Plaintiff admits that Defendants Garcia or Kavanaugh never threatened to place him into administrative segregation for filing 602 appeals or grievances.  (Wagley Dec. at ¶ 5.)

45. Defendant Kavanaugh never threatened to use "excessive force" against Plaintiff for filing

---

[10]Plaintiff disputes that Defendant Kavanaugh could legally suspend Plaintiff a second time from his position on the MAC.  (Id.)

602 appeals or grievances.  (Kavanaugh Dec. at ¶ 19.)

**B.     Plaintiff's Undisputed Facts**

1.     On July 14, 2008, Plaintiff informed Defendant Kavanaugh that Defendant Garcia called him a rat.  (ECF No. 47 at 4.)

2.     Defendant Garcia and floor staff summoned inmate McClain from his cell and expressed to him that Plaintiff had been having many conflicts with staff and that this can be taken as aggression and they can have Plaintiff placed in administrative segregation.[11]  (Id.)

3.     Inmates came forward at Plaintiff's appeal review and confirmed hearing Defendant Garcia call Plaintiff a rat.  (Id.)

4.     Defendant Garcia phoned officer Beam on or around July 7 or 8, 2008, and told him that Plaintiff ratted on her.  (Id.)

5.     Plaintiff wrote a letter to the facility captain regarding Defendant Kavanaugh's conduct on September 11, 2008.  (Id.)

**C.     Failure to Comply With Local Rules**

Defendants argue that Plaintiff's failed to comply with the Local Rules requiring his opposition to clearly reproduce Defendants' undisputed facts and admit or deny each fact, and Plaintiff failed to properly identify and support his claim that material facts exist.  Therefore, Defendants request the motion for summary judgment be granted.

The Court declines to grant Defendants' motion for summary judgment based on Plaintiff's failure to comply with the Local Rule.  By failing to specifically challenge the facts contained in Defendants' statement of undisputed facts, Plaintiff is deemed to have admitted those facts.  Beard v. Banks, 548 U.S. 521, 527, 126 S. Ct. 2572, 2577 (2006).  Plaintiff has submitted statements of undisputed, disputed, and uncontested facts.  To the extent that Plaintiff's statement of undisputed, disputed, or uncontested facts do not dispute Defendants' statement of undisputed facts, they are deemed admitted.

---

[11] In the complaint, Plaintiff alleged that Defendant Garcia and the housing unit two floor staff made statements that Plaintiff had been involved in a lot of staff conflicts lately and was showing too much aggression which "they can interpret as a 'threat' and have [P]laintiff placed in administrative segregation."  (ECF No. 1 at 16.)

1

2      **D.      Legal Standard**

3          It is well established that a prisoner has a right under the First Amendment to file a prison

4    grievance. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  A prisoner has a right to meaningful

5    access to the courts which includes the "broader right to petition the government for redress of his

6    grievances." Silva v. Di Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011); Bradley v. Hall, 64 F.3d

7    1276, 1279 (9th Cir. 1995) (overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2,

8    121 S. Ct. 1475 n.2 (2001)).  Prison officials may not retaliate against prisoners for exercising their

9    right to filed grievances.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

10         A viable claim of retaliation in violation of the First Amendment consists of five elements:

11   "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

12   prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

13   Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

14   Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108,

15   1114 (9th Cir. 2012); Brodheim, 584 F.3d at 1269.

16         A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against

17   for exercising his constitutional rights, and that the retaliatory action does not advance legitimate

18   penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d

19   813, 816 (9th Cir. 1994).  The plaintiff does not need to show actual inhibited or suppressed speech,

20   but that there was a chilling effect upon his speech.  Rhodes, 408 F.3d at 569.  The burden is on the

21   plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct.

22   Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

23     **E.      Discussion**

24         The Court finds that Defendants have met their initial burden of informing the Court of the

25   basis for their motion, and identifying those portions of the record which they believe demonstrate

26   the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish

27   that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus., 475 U.S.

28   at 586, 106 S. Ct. at 1356 (1986).

### 1.   <u>Favorable Termination Rule and Rule Violations</u>

Defendants argue that Plaintiff's claims arising out of the August 26, 2008, and November 9, 2008, incidents are barred under <u>Heck v. Humphrey</u>, 512 U.S. 447, 114 S. Ct. 2364 (1994). (Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment 8, ECF No. 43-1.) Plaintiff was convicted of rule violations and assessed good time credit forfeiture and loss of privileges. (<u>Id.</u> at 9.) The loss of good time credit cannot be separated from the other discipline Plaintiff received and success on the merits of these claims would necessarily imply the invalidity of the guilty findings. (<u>Id.</u> at 8-9.) Defendants contend that because the guilty findings have not been set aside, Plaintiff is barred from bringing these claims in a section 1983 action, and Plaintiff's claims must be brought by a petition for a writ of habeas corpus. (<u>Id.</u> at 8.)

Plaintiff argues that Defendants are seeking to mislead the Court by arguing that his claims are barred by <u>Heck</u>. He is not seeking the restoration of the time forfeited due to the rule violations, but is using them to show the adverse action he suffered due to the alleged retaliation of Defendants. (ECF No. 47 at ¶ 9.)

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a § 1983 action and their sole remedy lies in habeas corpus relief. <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 78, 125 S. Ct. 1242 (2005). Often referred to as the favorable termination rule, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or *indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody*." <u>Wilkinson</u>, 544 U.S. at 81 (emphasis added). Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." <u>Id.</u> at 81-82.

In <u>Edwards v. Balisok</u>, 520 U.S. 641, 117 S. Ct. 1584 (1997), an inmate was convicted of a rule violation and brought a civil rights action seeking damages and declaratory relief, alleging that he had been denied due process during the rule violation hearing. <u>Edwards</u>, 520 U.S. at 643, 117 S.

Ct. at 1586.  The District Court found that a finding in his favor would "necessarily imply the invalidity of the discipline hearing and resulting sanctions," and the Ninth Circuit reversed. Id. The Supreme Court granted certiorari and reversed.  Plaintiff argued that a judgment in his favor would not necessarily imply the invalidity of the deprivation of his good time credits because the state court followed a "some or any evidence" standard and the prison hearing results could be upheld.  Id. at 1588.  The Supreme Court held that it was irrelevant, and the claims based on the deceit and bias of the hearing officer were not cognizable under section 1983.  Edwards, 520 U.S. at 648, 117 S. Ct. at 1589.

Similarly here, Plaintiff argues that he is not seeking restoration of the time credits forfeited due to being found guilty of the rule violations.  However, the question is whether a finding in Plaintiff's favor would "necessarily imply the invalidity" and reduction in the duration of Plaintiffs' confinement.  Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003).  Plaintiff is alleging that he was falsely charged and convicted of a rule violation.  Plaintiff forfeited time credits as a result of the guilty finding.  In this instance, a finding in Plaintiff's favor would necessarily imply the invalidity of the disciplinary finding that Plaintiff was guilty of failure to obey a direct order.  Plaintiff is barred from bringing a section 1983 action for being charged with disobeying a direct order on August 26, 2008, and November 9, 2008, until such time as Plaintiff can demonstrate that the sentence has been invalidated.  Edwards, 520 U.S. at 643, 117 S. Ct. at 1586.

However, Plaintiff alleges that on August 26, 2008, Defendant Garcia falsely reported that he had forced open the door of the housing unit, and on November 9, 2008, Defendant Kavanaugh confiscated his food in retaliation for his filing grievances.  Since Plaintiff was not charged and found guilty of a rule violation based upon forcing open the door or being in possession of the food, a finding in his favor would not imply the invalidity of his confinement.  Plaintiff is not barred from bringing his claim that Defendant Garcia falsely reported that he forced the door to the housing unit open or that Defendant Kavanaugh confiscated his food in retaliation for his filing grievances.

## 2.   Adverse Action

Defendants argue that they are entitled to summary judgment because the adverse action which Plaintiff claims to have suffered due to the August 26, 2008, and November 9, 2008, incidents

are barred by <u>Heck</u> and Plaintiff has admitted that he was never threatened with being placed in administrative segregation. (ECF No. 43-1 at 8.)  In separate requests for production of documents, Defendants requested that Plaintiff "[p]roduce all documents which substantiate your allegation that you were threatened to be placed into Administrative Segregation." (ECF No. 43-1, Exhibit B at 10, 17.)  Plaintiff responded, "Denied.  I was never threatened to be placed in ad-seg." (<u>Id.</u> at 22, 26.)  In his opposition, Plaintiff alleges that Defendant Garcia and other staff threatened that he might be placed in administrative segregation which is adverse action.  (<u>Id.</u> at ¶ 11.)

"[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." <u>Broadheim</u>, 584 F.3d at 1270 (emphasis in original).  A threat need not be explicit, an implied threat is sufficient if it intimates that some type of punishment or adverse action will result from failure to comply. <u>Id.</u> at 1270-71.  Regardless of whether Plaintiff admitted or not that he was threatened, Plaintiff has sufficiently alleged adverse action.  Plaintiff alleges that Defendant Garcia falsely reported that he had forced open the housing unit door.  Forcing open a housing unit door would be a serious breach of security and threat to institutional safety.  Defendant Kavanaugh suspended Plaintiff from his position as MAC representative based upon the allegation and Plaintiff being charged with failure to obey a direct order.  (DUF No. 28.)  False allegations and suspension from the MAC are sufficient to allege adverse action to support Plaintiff's retaliation claim.

### 3.    Chilling Effect

Defendants argue that Plaintiff has filed multiple complaints of harassment and prolifically files writs, grievances, and appeals.  His speech has not been chilled and the adverse action that he alleges would not prevent a person of ordinary firmness from filing complaints and grievances. (ECF No. 43-1 at 12.)  Plaintiff correctly states that he does not have to demonstrate that his speech was actually inhibited or suppressed to show that Defendants action has a chilling effect on protected activity. (ECF No. 47 at ¶ 10.)

In the prison context, Ninth Circuit cases find sufficient adverse action in situations where the action taken by the defendant was clearly adverse to the plaintiff. <u>Rhodes</u>, 408 F.3d at 568 (officers confiscated, withheld, and destroyed property, threatened to transfer the inmate, and

14

assaulted him in retaliation for filing grievances); Watison, 668 F.3d at 1116 (refusing to serve inmate breakfast in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (defendant filed false report that resulted in inmate's placement in administrative segregation in retaliation for filing grievances); Bruce, 351 F.3d at 1288 (validation as a gang member in retaliation for filing grievances). Falsely reporting a serious breach of security and suspension from the MAC are adverse actions which would prevent a person of ordinary firmness from filing complaints and grievances.

### 4. Claims Against Defendant Garcia

Plaintiff's retaliation claim rests upon proof that Defendant Garcia falsely reported that he forced open the housing unit door on August 26, 2008, and refused to allow him to enter the housing unit on October 14, 2008, because Plaintiff filed an inmate grievance against her and the conduct did not advance a legitimate penological interest. Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997).

### a. August 26, 2008 Incident

On July 1, 2008, Defendant Garcia refused to release Plaintiff from his cell and in response, Plaintiff filed an inmate grievance.[12] On August 26, 2008, Plaintiff returned to the housing unit from his work assignment and states that he found the door halfway open. He and two other inmates entered the unit sally port. (ECF No. 47 at 20, ¶ 6.) Plaintiff contends that in response, on August 26, 2008, Defendant Garcia falsely reported that Plaintiff had forced open the housing unit door. Plaintiff argues that the July 14, 2008, incident in which Defendant Garcia called Plaintiff a rat shows that the rule violation was arbitrary and capricious. and therefore did not advance any legitimate correctional goals. Plaintiff states that it is "opaque that Garcia sought to silence [P]laintiff for complaining of her misconduct on July 14, 2008." (Id. at ¶ 8.)

Defendant Garcia states that the door to the housing unit was malfunctioning and would not close all the way. (DUF No. 18.) At the rule violation hearing regarding Plaintiff's failure to obey

---

[12]Although there is a dispute as to whether Plaintiff requested to be released from his cell to pass out pizza sale forms or to attend the MAC meeting, this is not material to the claims at issue here. Plaintiff has not alleged, nor is there any evidence before the Court, that Defendant Garcia failed to release Plaintiff from his cell because of any protected activity on the part of Plaintiff. Plaintiff has not shown that Defendant Garcia failed to release him from his cell because of his protected conduct, which is a required element to prevail on a retaliation claim. Broadheim, 584 F.3d at 1271.

a direct order to leave the housing unit, Plaintiff stated, "The door was open enough to where I could fit in sideways and I went in the rotunda." (DUF No. 19; ECF No. 43-4 at 89.)  Defendant Garcia testified that the door was open approximately two inches, and Plaintiff forced the door open wide enough so he could fit through sideways. (Id. at 88; DUF 19.)  Plaintiff was subsequently found guilty of a rule violation for refusing orders to leave the building. (DUF. No. 23.)

A factual dispute exists as to whether Plaintiff forced the door open.  Making credibility determinations, weighing the evidence, and drawing legitimate inferences are functions for the jury, not the judge. Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).  Additionally, while Defendant Garcia presents evidence that it  is a serious breach of institutional safety and security to force a door open to gain unauthorized entry to a housing unit, she fails to address Plaintiff's contention that he did not force the door open, but it was partially open and he was able to enter sideways.  Defendant Garcia has failed to meet her burden to establish that she is entitled to summary adjudication on the claim that she reported Plaintiff forced open the housing unit door on August 26, 2008, in retaliation for his filing a grievance against her, and the motion should be denied.

### b.   October 14, 2008, Incident

On October 14, 2008, Plaintiff's supervisor called Defendant Garcia in the control booth to request entrance for Plaintiff into the housing unit as Plaintiff's shift in the library was over early. (DUF No. 30.)  Maintenance staff were in Housing Unit 4 and all inmates were temporarily denied access to Housing Unit 4 until the maintenance staff were completed with their work.  Defendant Garcia informed Plaintiff's supervisor that maintenance staff were in the unit and she was unable to allow any inmates access to Housing Unit 4 until maintenance staff had vacated the unit.  (Id.)

While Plaintiff alleges that Defendant Garcia refused to allow him entry into the housing unit in retaliation for filing grievances, Plaintiff has not submitted any evidence controverting the facts set forth by Defendant Garcia, that Plaintiff was denied entrance to the housing unit on October 14, 2008, because the housing unit was undergoing maintenance.  The Court finds that there are no disputed facts that retaliation was the cause or a substantial factor in Plaintiff's being denied entrance to the housing unit on October 14, 2008.  No genuine issue as to any material fact exists, and

Defendant Garcia is entitled to summary adjudication on the claim that she denied Plaintiff entry into the housing unit on October 14, 2008.

### 5.   Claims Against Defendant Kavanaugh

Plaintiff's retaliation claim rests upon proof that Defendant Kavanaugh confiscated Plaintiff's food, and suspended Plaintiff as a MAC representative, because Plaintiff filed an inmate grievance and the conduct did not advance a legitimate penological interest. Hines, 108 F.3d at 267.

### a.   November 9, 2008, Incident

On November 9, 2008, Defendant Kavanaugh observed Plaintiff in the dayroom of Housing Unit 4 of Facility 3A with a large potato chip bag that clearly contained something heavier than the intended contents of the bag. (DUF No. 32.) Defendant Kavanaugh confiscated the potato chip bag from Plaintiff and observed that it contained prepared food.   Plaintiff protested Defendant Kavanaugh's request to look into the bag and began to question Defendant Kavanaugh about his authority to look into the bag. (DUF No. 33; ECF No. 47 at ¶ 14.)

Defendant argues that for the safety of correctional staff and inmates, correctional staff must conduct searches for contraband. Defendant Kavanaugh requested to search the potato chip bag and Plaintiff became agitated, verbally combative, and disrespectful to correctional staff in front of other inmates.   Plaintiff refused Defendant Kavanaugh's attempts to quell the situation by ordering Plaintiff to return to his cell.   In returning to his cell, Plaintiff yelled profanities at Defendant Kavanaugh. (ECF No. 43-1 at 13.)   Defendant argues that disposing of the bag and its contents was appropriate under the circumstances and not in retaliation for Plaintiff filing grievances. (Id. at 14.)

Plaintiff contends that the food was not contraband.   Defendant Kavanaugh refused to tell him what rule allowed him to confiscate the food, and confiscated it in retaliation for Plaintiff filing grievances. (ECF No. 47 at ¶¶ 14, 15.)   Plaintiff argues that inmates use food from the canteen to prepare food in their cells, and Defendant Kavanaugh is aware of this.  (Id. at ¶ 16.)

Plaintiff argues that Defendant Kavanaugh had no authority to confiscate food that had been purchased at the canteen.  However in this instance, it was clear by observing the potato chip bag that it did not contain potato chips.  Based upon his observation that Plaintiff was carrying a potato chip bag that contained something heavier than potato chips and the security concerns that it would

17

implicate, Defendant Kavanaugh would clearly have the authority to confiscate and investigate what was in the potato chip bag, which could have contained a weapon or contraband. It has long been established that security of the institution is a legitimate penological interest. Procunier v. Martinez, 416 U.S. 396, 413, 94 S. Ct. 1800, 1811 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874 (1989).

The issue here is whether throwing away the burritos that were inside the potato chip bag is sufficient adverse action to "chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 538. While the Court recognizes that the confiscation and destruction of an inmates property may be sufficient to chill protected speech, some adverse actions, even if they have the effect of chilling speech, are too trivial or minor to be actionable as a violation of the First Amendment. Keenan v. Tejeda 290 F.3d 252, 258 (5th Cir. 2002).

In this instance, Defendant Kavanaugh threw away burritos which were inside a potato chip bag that Plaintiff had received from another inmate. Plaintiff has continued to file grievances, so this did not chill the exercise of his First Amendment rights. Additionally, the act of throwing away Plaintiff's burritos falls short of incidents in which courts have found that an inmate has suffered sufficient harm to allege a chilling of his speech. See Rhodes, 408 F.3d at 563, 568 n.11 (correctional officers arbitrarily confiscated, withheld, and eventually destroyed inmate's typewriter, threatened to transfer the inmate, and assaulted him in retaliation for filing grievances); Watison, 668 F.3d at 1115-16 (refusing to provide inmate with breakfast and threatening to hit inmate in mouth for filing grievance); Silva, 658 F.3d at 1105 (confiscating inmates legal property and transferring him to another prison); Hines, 108 F.3d at 269 (false accusation of rule violation); Pratt, 65 F.3d at 804 (transfer to another prison and double celling). Plaintiff has failed to show that he suffered more than minimal harm which is insufficient to chill the First Amendment rights of a person of ordinary firmness.

Plaintiff argues that he was not being physically disruptive so as to incite or jeopardize the safety and security of the institution, and alleges that Defendant Kavanaugh threatened to pepper spray him in retaliation for filing grievances. The Court declines to find that safety and security concerns are only implicated by physically disruptive behavior. Courts have found that verbal

challenges or ranting at correctional staff are not within an inmate's First Amendment rights.
Johnson v. Carroll, No. 2:08-cv-01494 KJN P, 2012 WL 2069561, at *34 (E.D.Cal. June 7, 2012);
see Hale v. Scott, 371 F.3d 917, 919 (7th Cir. 2004) ("Prison regulations that forbid inmates to
behave insolently toward guards are constitutional."). A prisoner's verbal insubordination "is
proscribed by the legitimate goal of maintaining order and discipline within correctional
institutions." Johnson, No. 2:08-cv-01494 KJN P, 2012 WL 2069561, at *34. The California
Department of Corrections and Rehabilitation regulations prohibit such conduct. "Inmates, parolees
and employees will not openly display disrespect or contempt for others in a manner intended to or
reasonably likely to disrupt orderly operations within the institutions or reasonably likely to disrupt
orderly operations within the institutions or to incite or provoke violence." Cal. Code. Regs., tit. 15
§ 3004(b). While written insolence contained in a grievance may be protected, the direct face to face
challenge by Plaintiff of Defendant Kavanaugh's inspection of the suspicious package "presents a
danger of a disturbance and a disruption to institutional order that a written grievance does not."
Nunez v. Ramirez, 2010 WL 1222058, at *5 (S.D.Cal. Mar. 24, 2010).

The evidence before the Court shows that Plaintiff was causing a disruption by arguing with
Defendant Kavanaugh and was ordered to return to his cell. (DUF Nos. 33, 34.) Defendant
Kavanaugh repeated the order to return to his cell, and Plaintiff adamantly refused. (DUF No. 34.)
Because Plaintiff was refusing to comply with the order, Defendant Kavanaugh informed him that
he would order all the inmates in the dayroom to a prone position if Plaintiff continued to refuse to
comply. (DUF No. 35.) Plaintiff states that he did not refuse to return to his cell, but asked
Defendant Kavanaugh what rule gave him the authority to confiscate his burritos. (ECF No. 47 at
¶ 14.) Although Plaintiff states that he did not refuse to return to his cell, he did not obey the order
to return to his cell. Here, the threat to use pepper spray was in response to Plaintiff's failure to
comply with the orders to return to his cell due to the verbal altercation. Plaintiff has failed to
produce evidence to show that the threatened use of pepper spray was because of his protected
conduct.

Further, while Plaintiff asserts that the timing of this incident is circumstantial evidence of
Defendant Kavanaugh's retaliatory intent, Plaintiff filed his inmate appeal on September 11, 2008,

approximately two months prior to this incident. Although timing can be considered as circumstantial evidence of retaliation, it alone is not sufficient when there is little else to support the inference. Pratt, 65 F.3d at 808. Defendant Kavanaugh has presented sufficient evidence to rebut the timing of this incident to Plaintiff's filing of a grievance. The Court finds that no genuine issue as to any material fact exists, and Defendant Kavanaugh is entitled to summary adjudication on Plaintiff's claim that Defendant Kavanaugh retaliated against him on November 9, 2008, by confiscating and disposing of his burritos.

### b.   August 26, 2008, Suspension From MAC

Plaintiff alleges that Defendant Kavanaugh's suspension from the MAC for forcing open the housing unit door was retaliatory. Due to its serious nature, the August 26, 2008, incident was reported to Defendant Kavanaugh. (DUF No. 26.) Defendant Kavanaugh determined that Plaintiff's action of forcing a door open to gain entry into a housing unit is a serious breach of institutional security and a threat to staff safety. Defendant Kavanaugh prepared a notice to Plaintiff informing him that the serious nature of his actions were good cause to temporarily suspend him from his position as a housing representative to the MAC. (DUF No. 28.) Plaintiff's temporary suspension from the MAC ended on October 28, 2008, and he was reassigned as a Facility 3A, Housing Unit 4 Mac representative. (DUF No. 29.)

Plaintiff states that he informed Defendant Kavanaugh on August 26, 2008, that Defendant Garcia falsely reported that he had forced open the housing unit door to gain entry to the building in retaliation for his filing a grievance against her. (ECF No. 1 at 13; ECF No. 47 at ¶ 13.) Defendant Kavanaugh suspended Plaintiff from the MAC on the same date, finding his action of forcing the door open to allow entry of himself and two other inmates unauthorized entry into the housing unit was "a serious breach of institutional security and a threat to staff safety." (ECF No. 43-3 at 11.) In this instance, there is a factual dispute as to whether Plaintiff forced the door of the housing unit open or whether the door was partially open enough for him to enter. While Defendant Kavanaugh presents evidence that it  is a serious breach of institutional safety and security to force a door open to gain unauthorized entry to a housing unit, he fails to address Plaintiff's contention that he did not force the door open, but it was open. While it appears that a legitimate correctional

1   goal could exist for inmates to not enter through a broken housing door that is partially open,

2   Defendant Kavanaugh failed to present any evidence regarding this issue.  The Court finds that

3   Defendant Kavanaugh has failed to meet his burden and is not entitled to summary adjudication on

4   the claim that he suspended Plaintiff from the MAC on August 26, 2008.

5   ### c.   November 9, 2008, Suspension From MAC

6   Following the incident on November 9, 2008, Defendant Kavanaugh again suspended

7   Plaintiff from his position as a MAC representative.  (DUF No. 43.)  In this instance, Plaintiff's

8   suspension from the MAC was based not only upon the allegation that Plaintiff had forced open the

9   door to the housing unit, but that Plaintiff had been charged with Disobeying a Direct Order for the

10  August 26, 2008, incident, and had again refused to follow Defendant Kavanaugh's direct orders to

11  return to his cell during inmate mass movement in the housing unit.  Plaintiff had exhibit loud

12  disrespect in front of other inmates by yelling a vulgar expletive.  Defendant Kavanaugh found that

13  Plaintiff's conduct posed a threat to the safety of the institution and are counterproductive to the best

14  interests and welfare of the general population.  (ECF No. 43-3 at 32.)  In evaluating a retaliation

15  claim, the court is to "'afford appropriate deference and flexibility' to prison officials in the

16  evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt,

17  65 F.3d at 807 (citing Sandin v. Conner, 515 U.S. 472, 482, 115 S. Ct 2293, 2299 (1995)).

18  Plaintiff admits that he failed to comply with the orders of Defendant Garcia and other officers

19  on August 26, 2008, when he was ordered to exit the housing unit because the daily activity schedule

20  mandated that he was able to return to the housing unit when his work shift was over.  (ECF No. 47

21  at ¶ 6.)  Additionally, Plaintiff admits that he did not return to his cell when ordered to by Defendant

22  Kavanaugh on November 9, 2008, but asked what authority Defendant Kavanaugh had to confiscate

23  his burritos and yelled an expletive at Defendant Kavanaugh when he finally complied with the order.

24  (Id. at ¶ 3.)  Plaintiff may not defeat Defendants' motion for summary adjudication by tendering his

25  own opinion that he did not have to obey the orders of Defendants or that Defendant Kavanaugh did

26  not have the authority to suspend him from the MAC.  These are opinions rather than facts and are

27  inadmissible.  Finally, Plaintiff does not dispute that he was suspended from the MAC for the rule

28  violation of Failing to Obey a Direct Order.  (Id. at 2.)

Plaintiff has failed prove the absence of any legitimate correctional goals for the alleged conduct. Pratt, 65 F.3d at 807. Plaintiff had been found guilty of a rule violation for failing to obey the orders of correctional officers on August 26, 2008, and again failed to obey the direct order of Defendant Kavanaugh on November 9, 2008. Further, the November 9, 2008, incident occurred after the evening mess during mass movement of inmates, while Defendant Kavanaugh was attempting to get Plaintiff to return to his cell to quell the situation. During the incident, Plaintiff yelled a vulgar expletive at Defendant Kavanaugh in front of the other inmates.

The Court finds that Plaintiff has failed to dispute Defendant Kavanaugh's evidence that Plaintiff was suspended from his position as a MAC representative on November 9, 2008, because of Plaintiff being found guilty of failing to comply with direct orders of correctional officers on August 26, 2008, and causing a disturbance and failing to comply with the direct orders of correctional officers on November 9, 2008. No genuine issue as to any material fact exists and Defendant Kavanaugh is entitled to summary adjudication on the claim that Defendant Kavanaugh suspended him as a MAC representative on November 9, 2008, in retaliation for filing grievances.

### 6.    Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2085 (2011) (citations omitted). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001) overruled in part by " Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808. The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Ashcroft, 131 S. Ct. at 2083. This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. Id.; Nelson v. City of Davis, 685 F.3d 867, 884 (9th Cir. 2012). "The linchpin of

22

qualified immunity is the reasonableness of the official's conduct." Rosenbaum v. Washoe County, 654 F.3d 1001, 1006 (9th Cir. 2011).

The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)). A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236, 129 S. Ct. at 818.

The right the official is alleged to have violated must be defined at the appropriate level of specificity before the court can determine if it was clearly established. Dunn, 621 F.3d at 1200. At issue here is an inmate's right under the First Amendment to be free from retaliation due to filing inmate grievances.

There is no need to consider the defense of qualified immunity with respect to the claims that the Court has resolved in Defendants favor on summary judgment. Wilkie v. Robbins, 551 U.S. 537, 567 (2007). As to the remaining claims, Defendants Garcia and Kavanaugh are not entitled to qualified immunity. Viewing the facts in the light most favorable to Plaintiff, Defendant Garcia falsely reported that he forced open the housing unit door, and Defendant Kavanaugh suspended him from the MAC because he filed inmate grievances. It is clearly established that prison officials may not punish inmates by retaliatory conduct. Rhodes, 408 F.3d at 570; Bruce, 351 F.3d at 1290; Pratt, 65 F.3d at 806. Defendants motion for summary judgment on the grounds of qualified immunity should be denied.

**V.    Conclusion and Recommendation**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment be GRANTED IN PART AND DENIED IN PART as follows:

1.    Defendant Garcia's motion for summary judgment for reporting that Plaintiff forced open the housing unit door on August 26, 2008, be DENIED;

2.    Defendant Garcia's motion for summary judgment for refusing Plaintiff access to the housing unit on October 14, 2008, be GRANTED;

3.      Defendant Kavanaugh's motion for summary judgment for suspending Plaintiff from the MAC on August 26, 2008, be DENIED;

4.      Defendant Kavanaugh's motion for summary judgement for disposing of Plaintiff's burrito on November 9, 2008, be GRANTED;

5.      Defendant Kavanaugh's motion for summary judgment for suspending Plaintiff from the MAC on November 9, 2008, be GRANTED; and

6.      Defendants Kavanaugh and Garcia's motion for summary judgment on the grounds of qualified immunity be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**    **September 21, 2012**                    **/s/ Barbara A. McAuliffe**
                                                                    UNITED STATES MAGISTRATE JUDGE